## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JENNIFER BUNGER,**

          **Plaintiff,**      :

     v.                                 **Case No. 2:23-cv-2113**
                                         **Judge Sarah D. Morrison**
                                       **Magistrate Judge Chelsey M.**
                                       **Vascura**

**SURGE STAFFING, LLC,** *et al.*,      :

          **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Named Plaintiff Jennifer Bunger's Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs. (ECF No. 30.) Defendants Surge Staffing, LLC and Daily Services, LLC (collectively, "Surge") opposed the Motion (ECF No. 34), and Ms. Bunger replied (ECF No. 35). For the reasons below, the Court **GRANTS** the Motion. However, the proposed Notice is **NOT APPROVED** and must be modified **within seven days**.

### I.    FACTUAL BACKGROUND

Surge is a recruiting and staffing firm that specializes in workforce management, including the recruitment and placement of temporary workers. (*See* White Decl., ¶ 3, 4, ECF No. 34-1, PAGEID # 358.) It works with clients across all 50 states to annually place approximately 122,000 individuals seeking temporary

work. (*Id.*) To facilitate the placement of temporary workers, Surge employs Staffing Specialists[1] in 177 different branches in 23 states. (*Id.* ¶ 5.)

Ms. Bunger worked as a Staffing Specialist from November 2021 to July 2022 at two Ohio branches. (Mot. Ex. B, Bunger Decl. ¶ 3, 4, ECF No. 31-2, PAGEID # 203.) She was responsible for reviewing resumes and job applications; interviewing and assessing applicants to match their skills with clients' needs; training, coaching, and counseling temporary workers; and developing and retaining business with Surge's clients. (*See* Mot. Ex D, ECF No. 30-4, PAGEID # 211-21.) When a client had a staffing need, she would discuss the staffing position and duties with the client then she would review a pool of applicants to provide a list of candidates to the client. (Mot. Ex. B, Bunger Decl., ¶ 9-10, 15-16, PAGEID # 203-04.) Ms. Bunger did not make final hiring decisions; she needed her supervisor's approval. (*Id.*)

Ms. Bunger alleges that, throughout her employment, Surge paid her a "salary," and did not pay her overtime when she worked more than forty hours in a workweek. (*Id.* ¶¶ 6-8, 11-14, PAGEID # 203-04.) Nonetheless, her paycheck varied and depended on the number of hours she worked; if she missed work, or had to leave during the day, Surge reduced her pay by the number of hours she was absent. (*Id.*) Because of these reductions, Ms. Bunger received less than $684

---

[1] Surge also employed "Bilingual Staffing Specialists" and "Senior Staffing Specialists" to perform duties and tasks similar to Staffing Specialists. In 2023, Surge changed the job title from "Staffing Specialist" to "Talent Advisor." The Court's use of "Staffing Specialists" here includes "Talent Advisors."

during some pay periods. When she discussed these reductions with her manager, she was told that the deductions were because of her time off from work. (*Id.*)

## II.    PROCEDURAL BACKGROUND

On June 30, 2023, former Plaintiff Rebecca Green filed this lawsuit on behalf of herself and other similarly situated employees of Surge to recover unpaid overtime (Compl., ECF No. 1); she then filed a First Amended Complaint in September 2023 (First Am. Compl., ECF No. 14). When Ms. Green died, Mr. Nathanial Green was substituted for his wife, and Ms. Bunger was substituted as named plaintiff. (ECF No. 28.)

Ms. Bunger filed a Second Amended Complaint, alleging that Surge failed to pay her and other Staffing Specialists overtime wages and seeking relief under the Fair Labor Standards Act of 1938 ("FLSA") and the Ohio Prompt Pay Act (OPPA). (Sec. Am. Compl., ECF No. 29.) Ms. Bunger alleges that Surge misclassified Staffing Specialists as exempt from overtime pay and paid them a "salary" that varied based on the number of hours worked each week even though she and other similarly situated employees were primarily engaged in non-exempt duties. (*Id.* ¶¶ 26-35.) To date, fourteen people have filed consent forms to join this action as opt-in plaintiffs.

Ms. Bunger filed the present motion for court-facilitated notice to notify others of this action. (ECF No. 30.) She claims that Surge misclassified her as an exempt employee to avoid paying her overtime. (*Id.*) She argues that she and other Staffing Specialists were entitled to a guaranteed weekly pay of not less than $684 and that such salary should not be subject to reductions based on the number of

hours worked or work quality, but that Surge reduced her and others' weekly pay based on hours worked. (*Id.*)

### III.   ANALYSIS[2]

The FLSA generally requires employers to pay employees no less than time and a half for hours over forty worked in a workweek. 29 U.S.C. § 207(a)(1). The statute exempts from this requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To qualify for this exemption, an employee's position must satisfy three tests: 1) a duties test; 2) salary-level test; and 3) a salary-basis test. *Baden-Winterwood v. LifeTime Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009) (citation omitted). Relevant here are the salary-level test, which states that an exempt employee must be paid at least $684 and the salary-basis test, which states that an exempt employee must receive a predetermined amount of compensation each pay period on a weekly (or less frequent) basis and that predetermined amount cannot be reduced because of variations in the quality or quantity of work performed. *See* 29 C.F.R. §§ 541.200, 541.602.

If an employee is owed but not properly paid overtime, she may bring a claim on her own behalf and on behalf of other "similarly situated" employees. 29 U.S.C. §

---

[2] In a footnote, Surge asserts that the Court should deny Ms. Bunger's Motion because her class action OPPA claim under Federal Rule of Civil Procedure 23 and her FLSA action are incompatible. (Opp., ECF No. 34, PAGEID # 338.) Surge makes no further attempt at this argument, so the Court will not address it. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

216(b). However, no employee can be joined as a party in the action unless he or she consents in writing to become such a party and such consent is filed in the court in which such action is brought. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The FLSA does not address how other similarly situated employees might learn of the lawsuit and their right to join in the action, but the Sixth Circuit provided a framework in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023).

### A.    When litigation can proceed with "collectively."[3]

There is a two-step process for allowing opt-ins to a FLSA action. *Hogan v. Cleveland Ave Rest., Inc.*, No. 2:15-CV-2883, 2023 WL 5745439, at *4 (S.D. Ohio Sept. 6, 2023) (Marbley, J.) (citation omitted). The first step occurs early in litigation when the Court makes an initial determination as to whether the named plaintiff is similarly situated to other employees. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023). If a court determines that other employees are similarly situated, it will allow the plaintiff to notify those employees of the litigation and their right to "opt in" to it. *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

---

[3] FLSA actions are not class actions. In FLSA actions, those who opt in and are conclusively determined by the district court to be "similarly situated" to the original plaintiff(s) "become parties" to the action with "the same status in relation to the claims of the lawsuit as...the named plaintiffs." *Clark*, 68 F.4th at 1009 (quotation omitted). "[T]he term certification has no place in FLSA actions[.]" *Id.* (citations omitted).

A plaintiff must show a "strong likelihood" that she is similarly situated to the other employees. *Id.* at 1011. This strong-likelihood standard is borrowed from the test applied when granting a preliminary injunction and requires a showing greater than the one necessary to create a genuine issue of fact for surviving summary judgment, but less than the one necessary to show a preponderance of the evidence at trial. *Id.* In other words, a plaintiff shows a strong likelihood of similarity when her evidence raises questions "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (defining "strong likelihood of success on the merits" in the preliminary injunction context) (quotation and citation omitted).

The second step occurs after the close of discovery and requires a closer examination of whether the named plaintiffs are "in fact similarly situated" to any plaintiffs that have opted in. *Clark*, 68 F.4th at 1009-10.

**B.    Whether other employees are "similarly situated."**

A named plaintiff is similarly situated to other employees "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Plaintiff-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016). Employees are similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Plaintiff must show that her position is "similar, not identical" to the

6

position of plaintiffs who opt into the action. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.) (citations omitted). Similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Id.*

Multiple factors guide the Court's determination of similarly situatedness, including whether potential opt-in plaintiffs "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the [named] plaintiffs were." *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019)). Another factor is whether plaintiffs are subject to different individualized defenses. *Pierce*, 922 F.3d at 745 (citing *O'Brien*, 575 F.3d at 584). Courts consider affidavits of potential opt-in plaintiffs and whether there is evidence of a "widespread" discriminatory plan by defendant. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 759, 765 (N.D. Ohio 2015). No single factor is determinative; instead:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### C. Ms. Bunger has demonstrated that she is similarly situated to other employees.

Ms. Bunger alleges that she and the other Staffing Specialists did not satisfy the salary-level and salary-basis test because they were paid less than $684 some

weeks and performed non-exempt job duties. She asks the Court for permission to send notice of this suit to the following:

> All current and former Staffing Specialists and Talent Advisors employed by Defendants who worked in excess of forty (40) hours in one or more workweek(s), beginning three (3) years before the filing of this Motion and continuing through the final disposition of this case.

(ECF No. 30, PAGEID # 176.) In support of the Motion, Ms. Bunger attached her own sworn declaration, as well as declarations by eleven opt-in plaintiffs, and by Surge's former regional Senior Vice President Meredith Knight. (Mot. Ex. E-P, ECF Nos. 30-2, 30-5–30-16.) She provided pay stubs showing Surge's practice of reducing Staffing Specialists' pay based on hours worked and showing that she was paid less than $684 some weeks. (Mot. Ex. C, ECF No. 30-3, PAGEID # 209.) She also provided job descriptions for the Staffing Specialist and Talent Advisor positions from Surge's different locations. (Mot. Ex. D, ECF No. 30-4, PAGEID # 211-21.)

Ms. Bunger argues that the evidence submitted with her Motion demonstrates a strong likelihood that she, the current opt-ins, and other employees are similarly situated because they were subject to a single, companywide timekeeping and compensation policy, and they were all misclassified as exempt employees while performing the same non-exempt tasks. (*Id.*, PAGEID # 192-94.)

Under penalty of perjury, Ms. Bunger has declared that (i) when she worked more than forty hours in a workweek, Surge did not pay her overtime, (ii) Surge paid her a "salary" but routinely deducted her compensation based on the hours worked causing her pay to be less than $684 some weeks; (iii) her manager called these deductions "unpaid time," and (iv) she did not exercise independent judgment

8

in her primary duties and needed approval from her supervisors before a decision was final. (*See generally* Mot. Ex. B, Bunger Decl., ECF No. 30-2.) The declarations from current opt-ins lay out key commonalities with Ms. Bunger's testimony. In addition, Ms. Knight attested that she personally witnessed Surge use the same policy to pay all Staffing Specialists—as a former executive, Ms. Knight has direct knowledge of Surge's pay practices.

This evidence establishes a strong likelihood that Ms. Bunger, the current opt-ins, and the other Staffing Specialists performed the same tasks, were subject to the same policies, and are unified by a common theory underlying their causes of action.

> **D. Surge disputes Ms. Bunger's showing of similarly situatedness and establishes that at least some employees are not similarly situated to her.**

Surge raises several arguments that Ms. Bunger has not met her burden, asserting that Ms. Bunger has failed to show 1) that there was a common unlawful policy, 2) that there is common proof in the evidentiary record, 3) that the "collective" litigation would be efficient, and 4) that notice should be issued to employees who have signed arbitration agreements after this litigation commenced. The Court addresses each in turn.

*1. Common Unlawful Activity*. Surge first argues that it did not engage in an unlawful pay practice because any salary reductions were based on exhausted paid time off hours ("PTO"). It also disputes the validity of the salary basis test and

argues that Ms. Bunger has not shown a common plan to misclassify her and the potential opt-ins.

Courts typically do not consider merit-based arguments or resolve factual disputes at the notice stage. *Hogan*, 2023 WL 5745439, at *9-10. The critical determination at this stage is whether there is a *sufficient* showing of similarity to permit notice to others. *McCall v. Soft-Lite L.L.C.*, No. 5:22-CV-816, 2023 WL 4904023, at *6 (N.D. Ohio Aug. 1, 2023). As discussed above, Ms. Bunger has demonstrated a strong likelihood that she is similarly situated to the potential opt-ins. Surge's arguments about the validity of the salary basis test go to the merits of the claims and will be equally applicable to all Staffing Specialists. And its contentions that salary reductions were based on PTO can be addressed later.

**2. Common Proof**. Surge next contends that Ms. Bunger has not shown that there would be common proof for her and any opt-in plaintiffs. Surge asserts that such evidence is lacking for three reasons–first, Ms. Bunger seeks an improper advisory opinion; second, Ms. Bunger provided "substantially identical declarations" that are conclusory and based on hearsay; and finally, Ms. Bunger's declarations conflict with Surge's evidence about the employees' primary job duties. (Opp., ECF No. 34, PAGEID # 349-351.)

Surge asserts that Ms. Bunger seeks an improper advisory opinion because she wants to include employees who have not yet shown that they are similarly situated, i.e., Staffing Specialists employed by Surge "continuing through the final disposition of this case." That is incorrect. At the notice stage, the Court issues a

provisional finding of similarly situatedness—not an advisory opinion; the Court will make a final determination as to the potential opt-ins' similarly situatedness later in the case. *See Clark*, 68 F.4th at 1010-11 (explaining that a district court's determination to facilitate notice in an FLSA suit is "provisional" because the court must render a final decision on the underlying issue only after the record is fully developed).

As to Surge's argument that Ms. Bunger's declarations are similar and conclusory, "there is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel." *Polen v. JSW Steel USA Ohio, Inc.*, No. 2:22-CV-00085, 2023 WL 6860399, at *6 (S.D. Ohio Oct. 18, 2023) (Marbley, J.) (quoting *Headspeth v. TPUSA, Inc.*, No. 2:19-CV-2062, 2020 WL 3818922, at *4 (S.D. Ohio July 8, 2020) (Morrison, J.)). "The 'uniformity that Defendant derides' can and will be taken as 'a substantial indicator in favor of the plaintiffs being similarly situated.'" *Id.* And, the declarations do not appear to be based on hearsay; they contain facts based on first-hand observations. For example, Ms. Knight (a former senior executive at Surge) attests that she was involved with the development of companywide policies related to the timekeeping, compensation, and job duties.

Finally, at the notice stage, courts resolve any conflict between a moving plaintiff's declarations and a defendant's "happy camper" declarations (so-called because they tend to be from the employer's handpicked employees) in favor of the

11

movant. *See e.g.*, *Murphy v. Kettering Adventist Healthcare*, No. 3:23-CV-69, 2023 WL 6536893, at *5 (S.D. Ohio Oct. 5, 2023) (Rose, J.) (citation omitted).

**3. Efficiency**. Surge claims that Ms. Bunger has failed to show that the potential "collective" would be efficient because whether a Staffing Specialist performed non-exempt job duties turns on individualized evidence concerning over 1,700 employees across different states. (Opp., ECF No. 34, PAGEID # 351-52.) But when the plaintiff has met her burden at the notice stage, the employer does not overcome the showing by arguing that there are individual issues. *Luster v. AWP, Inc.*, No. 1:16CV2613, 2017 WL 3140697, at *3 (N.D. Ohio July 25, 2017). Notice and discovery are required to determine who opts in, whether any opt-ins have individual questions, and to what extent those individualized issues predominate over the common issues. *Id.* (finding that the defendant's argument that approving the notice will not promote judicial efficiency is better suited at the second stage of the action). If raised, the Court will address any individualized issues and efficiency during its second stage analysis.

**4. Arbitration Agreements**. Finally, Surge argues that some Staffing Specialist hired after September 12, 2023, are subject to an arbitration agreement, making Ms. Bunger not "similarly situated" to such employees. (Opp., ECF No. 34, PAGEID # 352-53.)

On this issue, Surge submits an unsigned arbitration agreement, which states that the employee and Surge

> . . . will utilize binding arbitration as the sole and exclusive means to
> resolve all disputes that may arise out of or be related in any way

12

> to…any and all claims arising during my employment and/or from any
> assignment by Company of me to provide services at a customer of
> Company, and/or the ending of an assignment by Company and/or its
> customer, and/or the termination of my employment with Company.

(White Decl., ECF No. 34-1, PAGEID # 364-67.) The Arbitration Agreement

covers,

> claims [. . .] against the Company for wrongful termination,
> discrimination, harassment, retaliation, breach of contract, wage and
> hour violations, and torts such as invasion of privacy, assault and
> battery, or defamation. . . . Except as set forth immediately below, I
> and the Company each specifically waive our respective rights to bring
> a claim against the other in a court of law and to have a trial by a
> judge or jury.

(*Id.*) According to Surge's Vice President of Human Resources, all Talent Advisors

hired after September 12, 2023, have signed the arbitration agreement.

Employees hired after September 12, 2023 are different than Ms. Bunger in

that such individuals agreed to arbitrate their claims. Notice cannot be sent to

them.

### E.     The proposed Notice and Consent to Join Form must be revised.

Court-authorized notice to potential opt-in plaintiffs under the FLSA must be

"timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Ms.

Bunger moves the Court to approve a proposed Notice to Potential Plaintiffs and

Consent to Join form. (Mot. Ex. A, ECF No. 30-1, PAGEID # 199-201.) The proposed

Notice contains basic information about the lawsuit, who may opt-in, and the timing

and manner in which to do so.  The Consent states that the signatory consents to be

13

a "party plaintiff" in this action and agrees to be represented by the law firm of Coffman Legal, LLC. The Court orders the following revisions.

**_Response Deadline_**. The proposed Notice and Consent to Join form currently state that potential opt-ins must respond within ninety days, but the Court hereby sets a forty-five day response deadline.

**_Right to Choose Counsel_**. The Notice and Consent to Join form shall be revised to advise an opt-in plaintiff that he or she has the right to choose his or her counsel. As the Sixth Circuit has explained, "opt-in plaintiffs in an FLSA collective have the right to select counsel of their own choosing." *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 403 (6th Cir. 2021) (internal quotation and citation omitted) (cleaned up); *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *8–9 (S.D. Ohio Apr. 1, 2011) (Frost, J.) (collecting cases).

The Court addresses Surge's five objections to the proposed Notice, Consent to Join form, and distribution plan below.

### 1. The Notice must further clarify that there will be a subsequent, final determination as to the status of opt-ins as parties to the suit.

Surge argues that the Notice is misleading because it states, "The parties are actively litigating the Case, and the Court has made no finding as to the merits of the case at this time." (Opp., ECF No. 34, PAGEID # 354.) Surge also objects to the use of the word "parties" on the proposed Consent to Join form. The word "party" appears once on the Consent Form and it states:

> I hereby consent to be a party-plaintiff in the above lawsuit, which is an action to recover unpaid overtime compensation.

14

(ECF No. 30-1, PAGEID # 201.) As *Clark* explains, potential plaintiffs become parties to an FLSA suit–as opposed to mere recipients of notice–only after they opt in *and* the district court determines conclusively that each of them is in fact "similarly situated" to the original plaintiff. *Clark*, 68 F.4th at 1009 (Emphasis added).

The Notice is not misleading; it correctly notes that the current parties are actively litigating this case. Nowhere does it refer to the Potential Plaintiffs as "parties." For clarity and consistency, nonetheless, the Court orders that Ms. Bunger change "member" to "potential plaintiff" under the "How do I join the Case?" section in the Notice (*See id.*, PAGEID # 200), and that Ms. Bunger advise Potential Plaintiffs that "The Court will make a final determination as to each potential plaintiff's status as a party to the suit at a later date" under this section.

### 2. The proposed Notice informs Potential Plaintiffs of the suit in a neutral manner.

Surge argues that the Notice is one-sided because the caption implies there has been a merit finding and does not include Surge's defense that the Potential Plaintiffs were properly classified as exempt.

The caption states, "NOTICE OF UNPAID OVERTIME WAGE LAWSUIT." Underneath the caption in a conspicuous font, the Notice states, "This Is a Court-Authorized Notice and Is Not a Solicitation from a Lawyer. The Court Has Made No Finding as to the Merits of this Case at this Time." Elsewhere, the Notice reiterates that the Court has made no findings as to the merits of the case.

15

The Court finds that these disclosures are sufficient. The objection is overruled.

### 3. The Notice must advise Potential Plaintiffs of their obligations associated with the discovery process.

Surge next objects that the Notice does not inform recipients that they may be required to participate in discovery. In response, Ms. Bunger proposes to include the following: "During the Case, you may have to participate in discovery, such as answering written questions, producing documents, and/or providing testimony," in the section titled, "What happens if I join the Case?" The Court sustains the objection and orders Ms. Bunger to include her proposed addition.

### 4. Surge must produce a list of Staffing Specialists with contact information.

Surge objects to Ms. Bunger's request for a list of all Staffing Specialists with contact information. The Court overrules Surge's objection and orders Surge to provide Ms. Bunger a list of Staffing Specialists (with contact information) excluding those hired after September 12, 2023 who signed an arbitration agreement.

### 5. Notice may be sent via email and U.S. mail.

Surge argues for distribution of the notice by U.S. mail alone. As to Ms. Bunger's proposed distribution method, the trend in this district "is to allow notice by mail and email to ensure that putative class members receive notice of the pending action." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899–900 (S.D. Ohio 2018) (Sargus, J.). The Court sees no reason to deviate from that trend. Ms. Bunger may send the Notice by U.S. mail and e-mail.

16

Surge's objection is overruled.

**6.    The use of third-party administrator to handle notice is unnecessary.**

Finally, Surge asks the Court to order that a third-party administrator handle the notice process. Surge's request is **DENIED**.

*    *    *

Ms. Bunger's proposed distribution plan is **APPROVED**, but her proposed Notice and Consent to Join form are **NOT APPROVED**. Ms. Bunger is **ORDERED** to move for final approval of a proposed Notice, Consent to Join form, and distribution plan consistent with this Opinion and Order **within seven days**.

## IV.    CONCLUSION

Ms. Bunger's Motion for Court-Appointed Notice is **GRANTED** and her distribution plan is **APPROVED**. However, her proposed Notice and Consent to Join are **NOT APPROVED**. Ms. Bunger is **ORDERED** to file a motion to approve a revised proposed Notice and Consent to Join form, **within seven days**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**